UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUDOLPH JUNE,

                   Plaintiff,

         v.

POWER AUTHORITY OF THE STATE OF NEW YORK,
  also known as New York Power Authority,
GIL QUINIONES, individually and President and Chief
  Executive Officer of Power Authority of the State of
  New York a.k.a. New York Power Authority,
JOSEPH KESSLER, individually and as Executive Vice
  President and Chief Executive Officer of Power
  Authority of the State of New York a.k.a. New York
  Power Authority,
JUSTINE DRISCOLL, individually and as Executive Vice
  President and General Counsel of Power Authority of
  State of New York a.k.a. New York Power Authority,
KRISTINE PIZZO, individually and as Executive Vice
  President and Chief Human Resources and
  Administrative Officer of Power Authority of the State of
  New York a.k.a. New York Power Authority, and
THOMAS MOODY, individually and as Electrical
  Maintenance Superintendent of Power Authority of the
  State of New York a.k.a. New York Power Authority,

                   Defendants.
_____

REPORT
and
RECOMMENDATION

19-CV-963S(F)

APPEARANCES:       GRECO TRAPP, PLLC
                          Attorneys for Plaintiff
                          JOSEPHINE A. GRECO and
                          EARL KENNETH CANTWELL, III, of Counsel
                          1700 Rand Building
                          14 Lafayette Square
                          Buffalo, New York  14203

                          BOND, SCHOENECK & KING, PLLC
                          Attorneys for Defendants
                          JONATHAN B. FELLOWS and
                          LIZA R. MAGLEY, of Counsel
                          One Lincoln Center
                          Syracuse, New York  13202-1355

and
SHARON M. PORCELLIO and
MARY ELIZABETH MORAN, of Counsel
Avant Building
200 Delaware Avenue
Suite 900
Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

August 20, 2021, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion to dismiss (Dkt. 4) filed September 9, 2019.

## BACKGROUND

Plaintiff Rudolph June ("Plaintiff"), who is African-American, commenced this

employment discrimination action on July 23, 2019, alleging he was subjected to

employment discrimination based on his race by corporate executives and supervisors

at Power Authority of the State of New York ("New York Power Authority" or "NYPA"),

his former place of employment.  Defendants to this action include NYPA, Gil

Quiniones, President and Chief Executive Officer ("CEO") of NYPA ("Quiniones"),

Joseph Kessler, Executive Vice President and CEO of NYPA ("Kessler"), Justin Driscoll,

Executive Vice President and General Counsel of NYPA ("Driscoll"), Kristine Pizzo,

Executive Vice President and Chief Human Resources and Administrative Officer of

NYPA ("Pizzo"), and Thomas Moody, Electrical Maintenance Superintendent of NYPA

("Moody") (together, "Defendants").  Plaintiff asserts 21 race-based employment

discrimination claims including disparate treatment, hostile work environment, and

retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), and 42 U.S.C. § 1983 ("§ 1983") (enforcing 42 U.S.C. § 1981 and constitutional rights).  The claims asserted against Defendants Quiniones, Kessler, Driscoll, Pizzo and Moody ("Individual Defendants") are asserted against them both in their official and individual capacities.

On September 9, 2019, Defendants, who have yet to file an answer, filed a motion to dismiss the Complaint in its entirety (Dkt. 4) ("Defendants' Motion"), along with the Memorandum of Law in Support of Defendants' Motion to Dismiss (Dkt. 5) ("Defendants' Memorandum").  On October 18, 2019, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Dkt. 11) ("Plaintiff's Reply").  On November 1, 2019, Defendants filed the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss (Dkt. 12) ("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED in part, DENIED in part, and DISMISSED as moot in part.

## FACTS[1]

Plaintiff Rudolph June ("Plaintiff" or "June"), who is African-American, holds a Master's degree.[2]   In 2009, Plaintiff commenced working at Defendant Power Authority of the State of New York, also known as New York Power Authority ("NYPA"), as a contractor with Rotator Staffing and was assigned to NYPA's Niagara Power

---

[1] The Plaintiff's allegations, taken from the pleadings filed in this action, are treated as true on a motion to dismiss.  *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008).

[2] It is not clear from the pleadings in what subject Plaintiff holds the Master's degree.  Complaint ¶ 44.

Project ("NPP").  In June 2011, Plaintiff became directly employed by NYPA as a Construction Engineer II, and was promoted on July 9, 2012 to Outage Planning & Scheduling Manager.  Plaintiff maintains that throughout his tenure with NYPA, he was regularly subjected to false accusations of misconduct and a racially hostile work environment about which Plaintiff made repeated complaints, all of which were either ignored or found unsubstantiated, and which Plaintiff maintains were the impetus for the termination of his employment on February 12, 2019, and maintains he and other minority NYPA employees were denied promotions on several occasions in favor of Caucasian employees, and was subjected to unwarranted discipline and criticism with respect to his job performance which undermined Plaintiff's authority and credibility in the workplace.

In particular, Plaintiff alleges that on June 12, 2009, Plaintiff learned an African-American NYPA employee reported to NYPA Executive Vice President and Chief Operating Officer Edward Welz ("Welz"),[3] discovering "KKK" written in various places throughout the Lewiston Pump-Generating Plant ("LPGP").[4]

In July 2009, Defendant Joseph Kessler ("Kessler"), a Caucasian, was promoted over NYPA Electrical Maintenance Supervisor Harry Francois ("Francois"), who is Haitian, and Francois advised Plaintiff that the workplace at NYPA was permeated with racial discrimination.

On January 30, 2014, Caucasian non-parties Operations Superintendent Frank Nablach ("Nablach"), and Mechanical Maintenance Superintendent Pete Watkins

---

[3] Welz is not a party to this action.
[4] Although not specifically stated, the context of the Complaint's factual allegations strongly implies the LPGP is part of the NPP.

("Watkins"), criticized Plaintiff for addressing workplace harassment during a safety meeting despite Plaintiff using an approved workplace safety website as the source for the training, and advised Plaintiff to keep future safety talks "work related."  Complaint ¶ 35.

In February 2014, Plaintiff applied for a posted Asset Manager position, so as to avoid working near one Jeffrey Jordan ("Jordan"), an Electrical Maintenance Planner and also a non-party Caucasian employee whom Plaintiff maintains exhibited racially-discriminatory behavior.  Although the Asset Manager position, as originally posted, required a Master's degree, which Plaintiff had obtained, the job was later re-posted to require only a Bachelor's degree and, in December 2014, a less qualified Caucasian employee, non-party Jack Doescher ("Doescher"), who holds only a Bachelor's degree and who was permitted to personally observe the functioning of the Asset Manager position prior to applying for the position, was selected for the position instead of Plaintiff.  Meanwhile, Jordan physically threatened and swore at Plaintiff, yet Plaintiff was required to continue working within 20 feet of Jordan, in contrast to an earlier situation where another, unidentified employee falsely accused Plaintiff of workplace violence, following which Plaintiff was instructed to have no contact with the employee who made the accusation.

On April 10, 2014, Plaintiff's then supervisor, a Caucasian non-party, Operations Superintendent Frank Nalbach ("Nalbach"), criticized Plaintiff in front of his peers for the extension of a power outage period which Nablach, non-party Caucasian Chris Carey ("Carey"), and Plaintiff previously agreed to extend.

On November 24, 2014, Plaintiff overheard Caucasian non-parties and Planners Jordan and James Rocco ("Rocco") discussing events in Ferguson, Missouri, and Jordan stated, "'Those people' are always claiming racism to cover up their criminal activity."  Complaint ¶ 43.

On June 22, 2015, Plaintiff became aware of and photographed racist images drawn inside a tunnel at the LPGP facility, depicting African-Americans as primates and labeled with the name of an African-American NYPA employee.  Upon learning the images were there for more than five years, Plaintiff sent the photographs to Defendant Chief Human Resources and Administration Officer Kristine Pizzo ("Pizzo"), Affirmative Action Officer ("AAO") Nancy Harvey ("AAO Harvey"), and Human Resources Manager Sean Smith ("Smith"), yet no corrective action was taken.

On September 9, 2015, one Pamela Green, a non-party African-American, complained to Francois a non-party who is Haitian, and non-party Caucasians Labor Relations Manager Stephen Colan ("Colan"), Smith, and Warehouse Supervisor John Briggs ("Briggs"), that a Confederate flag was displayed in the LPGP parking lot.  Smith instructed the flag be removed.

In late summer and early fall of 2015, one Cynthia Chaney ("Chaney"), a non-party Caucasian, engaged in improper conduct toward her then supervisor, Nick Gilewski ("Gilewski"), a non-party Caucasian, following which Chaney was reassigned to report to James Kirkland ("Kirkland"), a non-party, who was replaced by Plaintiff. Chaney falsely accused Plaintiff of workplace violence and gender discrimination, causing Plaintiff to request Chaney be assigned to a different supervisor, but the request was denied.

In December 2015, Acting Operations Superintendent Carey became Plaintiff's supervisor and proceeded to racially discriminate against and harass Plaintiff with unwarranted criticism and excluded Plaintiff from work activities important to Plaintiff's job.  In particular, at a December 11, 2015 Department Superintendents' Meeting, Carey falsely accused Plaintiff of including inaccurate information on the 2016 power outage schedule, and subsequently ignored, ostracized and excluded Plaintiff from work activities important to Plaintiff's job.

On January 5, 2016, June applied for an available Operations Superintendent position for which Plaintiff was qualified, but Carey, then Acting Operations Superintendent although not meeting the job's qualifications, was promoted to Operations Superintendent.  On January 28, 2016, Plaintiff advised Smith that Plaintiff was interested in an available Associate Conservation Engineer position, for which the pay grade was below Plaintiff's current position, because Plaintiff would no longer be under the supervision of Carey.[5]

On January 19, 2016, Plaintiff learned a cartoon depicting an African-American female wearing a business suit and a person dressed in a suit of armor labeled OPS for Operations Department, was posted on a bulletin board.  The drawing's caption read, "Yeah, I heard you had to be thick-skinned to work in that department."  Complaint ¶ 65. Plaintiff understood the cartoon to refer to his Caucasian managers who, relative to the filing of complaints of racial discrimination by Plaintiff as well as by one Shirley Hamilton, an African-American NYPA employee, advised Plaintiff he needed to have "thicker skin."  *Id.*

---

[5] It is not clear from the record whether Plaintiff was selected for the Associate Conservation Engineer position.

On January 21, 2016, Defendant Electrical Maintenance Superintendent Thomas Moody ("Moody"), who is Caucasian, during a meeting with Plaintiff, his peers, and subordinates, insinuated Plaintiff arrived to work late at 8:00 A.M., despite knowing Plaintiff attended daily meetings at 7:40 A.M. with senior LPGP leadership.  Plaintiff attributes Moody's comment to "the stereotype that African-Americans are lazy and not hard-working. . . ."  Complaint ¶ 64.

On February 10, 2016, Carey required Plaintiff complete the portion of the Resource Loaded Schedule usually completed by individual planners who were most knowledgeable about the necessary information for the task.  Plaintiff maintains that by assigning the task to Plaintiff, Carey unjustifiably negatively altered Plaintiff's job duties because of his race.  On March 31, 2016, Carey criticized Plaintiff for not placing a power outage schedule on the NYPA's internet webpage, despite being aware Plaintiff was not authorized to update the NYPA's webpage.

On May 16, 2016, Plaintiff interviewed for an Electrical Maintenance Supervisor position, a position lateral to, but less desirable than Plaintiff's current position, but which did not report to Carey but to Moody.  After making a lateral move to the less desirable position of Electrical Maintenance Supervisor on June 30, 2016, reporting to Moody, a Caucasian, Plaintiff attempted to obtain a CPP-1 clearance certificate,[6] but after completing the initial tasks required to do so, Carey, on multiple occasions throughout 2016, 2017, and 2018, repeatedly failed to schedule and administer the necessary examination to Plaintiff.  When Plaintiff complained to Moody that Carey was preventing Plaintiff from taking the examination, Moody failed to take any action.

---

[6] The "CPP-1 clearance certificate" is not further described in the Complaint and motion papers.

In July 2016, Plaintiff applied for the position of Vice President, New York Energy Manager, located in NYPA's main office in White Plains, New York.  Although on July 29, 2016, Plaintiff was informed by Russell Reynolds Associates, a third-party search firm NYPA used to seek and screen applicants and schedule initial interviews for the position, that Plaintiff was selected to interview for the position on August 11, 2016, on August 9, 2016, NYPA's Director of Recruiting Barbara Coles ("Coles"), a non-party, advised Plaintiff that NYPA had identified other candidates whose qualifications more closely matched the position's requirements and Plaintiff was not permitted to interview for the position.

On August 10, 2016, non-party and Caucasian electrical engineer Mike Salvati ("Salvati"), performed work that, according to the applicable collective bargaining agreement ("CBA"), was to be performed by a union electrician and for which Plaintiff had an active work order with the union.  When Plaintiff addressed the CBA violation with Salvati, Salvati questioned Plaintiff's competence.  The next day, Moody excused Salvati's conduct, but issued a written discipline to Plaintiff for failing to demonstrate role-modeling appropriate behavior and positive leadership and to exercise diplomacy.

In September 2016, Plaintiff complained to Moody that non-party and Caucasian Electrical Planner Andy Minarcin ("Minarcin"), had insufficient job assignments for Plaintiff's electrical crew.  Moody responded by insisting on attending the next weekly scheduling meeting with Plaintiff and Minarcin, and Plaintiff later learned Moody falsely alleged Moody had to attend the meeting to facilitate effective communications between Plaintiff and Minarcin.

On October 21, 2016, non-party and Caucasian electrician Joe Rosati ("Rosati"), told Plaintiff that if Plaintiff was given his supervisor's position when the supervisor retired, it would only be because Plaintiff is black.  On October 28, 2016, Plaintiff became aware that non-party and Caucasian electrician Jessie Haley ("Haley"), referred to Plaintiff and one James Kirkland, an electrical engineer who also is African-American, as the "Soul Train."  Complaint ¶ 83.

On May 18, 2017, Moody instructed Plaintiff to engage in an unsafe work practice on a task involving use of a crane; when Plaintiff objected, Moody issued Plaintiff a written discipline alleging Plaintiff failed to ensure workplace safety.

On June 1, 2017, Moody falsely accused Plaintiff of failing to assign an electrician to install a high water level alarm in the scroll case, but Plaintiff maintains the alarm was installed, but malfunctioned and caused an overflow.

Plaintiff scheduled an electrician to download computer data on June 13, 2017, but before the download was performed, Moody inquired about the status of the downloaded data.  Plaintiff advised higher priority jobs impacted the data generation and download, unaware that Moody had already contacted another electrician to perform the download, and that by doing so, Mood overrode Plaintiff's supervisory responsibilities without first obtaining information relevant to making such decision.  In an e-mail to Moody sent later that morning, Plaintiff advised Moody he was ill and leaving for the rest of the day.  Moody denied receiving the e-mail.

On June 21, 2017, Chaney refused to engage in a coaching session with Plaintiff and was directed to leave work.[7]  When Chaney refused to do so, Plaintiff called for

---

[7] The record does not specify the employee who directed Chaney to leave work on June 21, 2017, although the context suggests in was Plaintiff.

security to remove her.  Later that day, Chaney falsely accused Plaintiff  of placing his hands on Chaney during the attempted coaching session, and also made a similar report to the New York State Police.  Moody then removed Plaintiff from his supervisory role and instructed Plaintiff to have no contact with Chaney.  In contrast, when Plaintiff complained against workplace violence perpetrated by Jordan, Defendants refused to take any action and required Plaintiff to continue working within 20 feet of Jordan for another year and a half when Jordan retired.  On August 30, 2017, Smith advised Plaintiff in writing that NYPA could not substantiate Chaney's complaint that Plaintiff put his hands on her.

On September 15, 2017, Moody pressured Plaintiff to violate the CBA by assigning non-party electrician Jessie Haley ("Haley"), to forced overtime, but Plaintiff refused to comply and reported the incident to Smith and NYPA's Corporate Human Resources Director Rani Pollack ("HR Director Pollack" or "Pollack").  Smith confirmed Plaintiff should not have complied with Moody's request but Moody was not disciplined for his conduct.

On September 26, 2017, NYPA employees working at the Niagara River intake vault and supervised by Plaintiff raised a safety concern with regard to a procedure that was required to be performed by a CPP-1 clearance certificate holder ("the vault incident").  Because Plaintiff did not hold a CPP-1 clearance certificate, Plaintiff did not interfere with the procedure, but was issued discipline, whereas following a similar incident on October 13, 2016, Moody, who holds CPP-1 clearance certificate, was not disciplined.

On September 27, 2017, Plaintiff's work vehicle was wrapped in red tape bearing the warning "PLEASE DO NOT ENTER" while Plaintiff was at work.  Plaintiff's Complaint at 109.

On October 18, 2017, Plaintiff left work after experiencing an adverse reaction to aerosol exposure near his office.  When Plaintiff advised Moody why he was leaving, Moody responded that Plaintiff "Always seems to be having problems," Complaint ¶ 113, which Plaintiff interpreted as implying Plaintiff was a complainer based on Plaintiff's complaints of racial discrimination, hostile work environment, and retaliation.

In October 2017, Plaintiff became aware that the words "Black Lives, Kill Them All" were written inside the locker of non-party Caucasian and general maintenance employee Jessie Wolcott ("Wolcott").  Complaint ¶ 114.  Plaintiff reported the matter to Smith, who disregarded the complaint, advising Plaintiff that NYPA was spending too much time investigating Plaintiff's complaints and needed to focus more on production. Plaintiff later learned Wolcott told another employee Wolcott thought the phrase was funny, and yet another employee reported hearing Wolcott using the racially-offensive slur "N_____" while working at the LPGP facility.  Despite their racially-offensive nature, Defendants took no action addressing these concerns reported by Plaintiff.

On November 14, 2017, Moody issued Plaintiff a written warning ("November 14, 2017 warning"), approved by Francois, and suspended Plaintiff for one week for conduct Plaintiff maintains did not warrant discipline either because the conduct either did not occur, or similarly situated Caucasian employees were not disciplined for similar conduct.  The November 14, 2017 warning referenced numerous incidents of Plaintiff's purported malfeasance including

12

(1) the September 26, 2017 vault incident despite the fact Plaintiff did not hold a CPP-1 clearance certificate, because Plaintiff's attempts to obtain the certificate were repeatedly thwarted by Moody and Carey;

(2) Chaney falsely claimed Plaintiff forced her to perform work in violation of OSHA standards;

(3) Plaintiff failed to report his June 13, 2017 sick leave to Moody;

(4) on June 23, 2017, Chaney alleged Plaintiff assigned her to a job assignment for which Chaney did not have the necessary equipment but Plaintiff was not then acting as a supervisor and thus did not prepare or revise the assignment schedule;

(5) on September 11, 2017, Moody was required to intervene when Plaintiff did not permit an apprentice who was scheduled to attend CPP-1 clearance certificate training to miss the training and attend a United Way event, and contacted the labor relations manager to request a substitute attend the United Way event;

(6) on September 15, 2017, Plaintiff admitted his crew's morale was lowered, which increased transfer requests because Plaintiff held his crew accountable for job performance and maintaining breaks and lunch periods in accordance with the CBA, which made Plaintiff appear inflexible;

(7) on October 3, 2017, Plaintiff, in accordance with NYPA policies and procedures and the CBA, asked for employees at the afternoon muster to volunteer for overtime, a practice in which Plaintiff maintains other similarly situated and Caucasian supervisors engaged without criticism;

(8) on October 5, 2017, Plaintiff failed to arrange transportation for his crew in connection with a job assignment causing them to be late for their work, yet the crew had access to the keys for three vehicles available for daily use by the Electrical Maintenance Department; and

(9) on October 11, 2017, Moody falsely alleged Plaintiff left his staff without any assignments while Plaintiff was on an approved vacation day, but Plaintiff prepared the schedule and work orders for the day and made them available to the supervisor who substituted in Plaintiff's absence.

In January 2018, Chaney filed an AAO complaint alleging Plaintiff discriminated against her on the basis of gender.  NYPA failed to disclose the details of the claim to Plaintiff.

At some unspecified time Plaintiff damaged his work boots while working, disposed of the boots and purchased new boots to replace the damaged boots.  On May 18, 2018, Plaintiff sought reimbursement for the boots, but Moody refused the request without first physically inspecting the damaged boots which was not possible

because Plaintiff had disposed of them and NYPA policy did not require such physical inspection.

On May 21, 2018, Plaintiff requested Francois and Moody assign Chaney to another supervisor, but the request was denied despite granting an earlier request by Chaney's previous supervisor, non-party and Caucasian Nick Gilewski ("Gilewski"), that Chaney be reassigned.  On May 25, 2018, Plaintiff made another request to Moody that Chaney be reassigned after Chaney filed a grievance falsely accusing Plaintiff of denying Chaney overtime to which she was entitled under the CBA.  Moody again denied the request, stating Plaintiff was more interested in complaining about harassment, discrimination, and retaliation in the workplace than fact-finding.

On June 11, 2018, Plaintiff was injured at work and was on a medical leave until September 6, 2018.  After going on medical leave on June 11, 2018, Defendants issued Plaintiff an unwarranted written warning criticizing Plaintiff for failing to obtain a CPP-1 clearance certificate, being inflexible, and having an improper demeanor ("June 11, 2018 warning").  On June 26, 2018, a final written warning was issued ("final warning"). The June 11, 2018 warning and the final warning were not provided to Plaintiff September 6, 2018, when Plaintiff returned from medical leave.  Among the criticisms included the June 11, 2018 written warning and final warning are that the June 11, 2018 workplace accident in which Plaintiff was injured was attributed to Plaintiff's improper use of a step ladder.

On September 13, 2018, Plaintiff contacted Carey about moving forward with Plaintiff obtaining CPP-1 clearance certification.  Moody responded Plaintiff would not

be permitted to move forward with the certification until Plaintiff attended additional meetings with Moody.

On September 19, 2018, Moody temporarily transferred two electricians from Plaintiff's assigned crew to another location.  One of the transferred electricians volunteered for the transfer, but the other was "forced" pursuant to the CBA.  The transfers reduced Plaintiff's crew, resulting in low morale and requiring vault preventative maintenance work be rescheduled which negatively impacted Gilewski. Plaintiff also advised Moody that Plaintiff observed employees were failing to wear their hardhats and that it was Plaintiff's enforcement of workplace safety rules that was the basis of contention between Plaintiff and his subordinates.  Moody then failed to attend a scheduled meeting with Plaintiff regarding Plaintiff becoming a CPP-1 clearance certificate holder.

On September 21, 2018, Plaintiff was involved in an automobile accident while driving a NYPA vehicle at work resulting in no injuries.

On September 26, 2018, a grievance was filed accusing Plaintiff of improperly directing the removal of "Personal Protective Grounds"[8] by his crew, Complaint ¶ 141, but Plaintiff was not advised of the grievance while he remained employed by NYPA, thereby depriving Plaintiff of the opportunity to challenge the allegations, in violation of CBA policy.

On October 2, 2018, at 5:41 A.M., Plaintiff requested from Moody, in accordance with NYPA policy, an emergency absence for a portion of the morning to care for his

---

[8] This reference is not otherwise defined.

mother.  Moody reprimanded Plaintiff for failing to call NYPA's ACO's Operations Supervisors because Operations Superintendent Carey preferred to be verbally notified.

On October 4, 2018, Plaintiff complained of racial discrimination to Moody because similarly situated Caucasian employees arrived after Plaintiff to Thursday morning department meetings without discipline.

During an October 25, 2018 department meeting, Moody stated that the Medical Emergency Team was to be called whenever an employee was injured, regardless of whether the employee wanted the team's assistance, adding, "They can bleed to death, I don't give a shit."  Complaint ¶ 145.  Although Smith, Francois, and Pollack were advised of Moody's conduct, Moody was not disciplined, in contrast to Plaintiff who was improperly issued written discipline for failing to demonstrate role-modeling, appropriate behavior, demonstrate positive leadership, and exercise diplomacy.

On November 13, 2018, Moody instructed Plaintiff to violate the CBA by permitting employees an unspecified "reasonable" amount of time for lunch in excess of the 30 minutes allowed under the CBA.  Plaintiff feared Moody would find any additional time allowed by Plaintiff to be unreasonable and subject Plaintiff to further discipline.

On January 3, 2019, Moody falsely accused Plaintiff of refusing to perform a job for non-party and Caucasian Operations Supervisor Phil Scime ("Scime"), thereby unjustly criticizing and undermining Plaintiff's authority in the workplace.

On February 12, 2019, Defendants terminated Plaintiff's employment.

**Discrimination and Harassment Complaints**

On numerous occasions, Plaintiff filed with AAO Harvey, and HR Director Pollack, complaints about racially-disparate treatment, failure to promote based on race,

and racially-hostile work environment.  In particular, Plaintiff filed such complaints with

AAO Harvey on December 10, 2014, March 10, 2015, June 6, 2015, June 22, 2015,

June 27, 2015, January 5, 2016, January 26, 2016, January 27, 2016, February 12,

2016, April 1, 2016, September 7, 2018, October 9, 2018, and January 3, 2019.  Plaintiff

filed complaints with HR Director Pollack on October 28, 2016, June 21, 2017, July 19,

2017, September 15, 2017, September 27, 2017, December 15, 2017, September 7,

2018, September 25, 2018, October 9, 2018, and January 3, 2019.  Plaintiff's

complaints filed with HR Director Pollack also advised that AAO Harvey had failed to

timely act on Plaintiff's complaints filed with Harvey.

On January 25, 2018, Plaintiff filed with the Equal Employment Opportunity

Commission ("EEOC") a Charge of Discrimination ("EEOC Charge") against NYPA

alleging he was the victim of racial discrimination, harassment, hostile work

environment, and retaliation which were ongoing and relative to his NYPA employment.

On January 27, 2015, February 4, 2016, February 2, 2017, and May 2018,

Plaintiff received unfavorable job performance reviews from, respectively, Nablach,

Carey, and Moody that were unwarranted.  According to Plaintiff, the negative job

reviews were intended as retaliation against Plaintiff for complaining about racially

disparate treatment and a hostile work environment at NYPA.


## DISCUSSION

**1.      Dismissal for Failure to State a Claim**

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b) (6)"), the court

looks to the four corners of the complaint and is required to accept the plaintiff's

allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984); *Goldstein v. Pataki,* 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). The Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills,* 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris,* 572 F.3d at 72 (quoting *Iqbal,* 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on

its face").  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly,* 550 U.S. at 570.  Further, the court is obligated to liberally construe a complaint alleging a § 1983 claim, even though not filed *pro se.  See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all references in the plaintiff's favor"); *Leonard Partnership v. Town of Chenango,* 779 F.Supp. 223, 234 (N.D.N.Y.1991) (construing allegation by plaintiff, represented by counsel, that defendant town denied building permit as due process violation even though § 1983 was not mentioned in the complaint where such construction did not prejudice town given that defendant itself had construed complaint as based on § 1983 and accordingly addressed claim).

In support of their motion seeking dismissal of the Complaint for failure to state a claim Defendants argue that many of Plaintiff's claims are time-barred, Defendants' Memorandum at 4-11, and that the claims should be dismissed against Quiniones, Kessler, Driscoll, Pizzo, and Moody (together, "individual Defendants"), because the Complaint fails to provide fair notice of the claims asserted against each individual Defendant, *id*. at 11-13, insofar as the claims are asserted against the individual Defendants in their official capacity, the claims are duplicative of the claims asserted against the NYPA, *id*. at 13-16, the claims must be dismissed against Quinones, Kessler, Driscoll, and Pizzo (together, "NYPA Officials"), in their individual capacities as such Defendants are neither "employers" nor "aiders/abettors" as those terms are

defined in the relevant statutes, *id*. at 16-21, and Defendant NYPA Officials were not personally involved in the alleged infringement of Plaintiff's federal rights.  *Id*. at 21-23.

In opposition to dismissal, Plaintiff argues the Complaint's factual allegations provide all Defendants with notice of the basis for Plaintiff's unlawful race discrimination, racially hostile work environment, and retaliation claims, Plaintiff's Response at 5-8, none of Plaintiff's claims are time-barred insofar as Plaintiff is alleging a hostile work environment and that Plaintiff's unlawful conduct was part of an ongoing custom, policy or practice establishing a continuing violation, *id*. at 8-11, the Title VII claims pleaded against the individual Defendants in their individual capacities are not redundant of the claims asserted against NYPA, *id*. at 11-13, and the Complaint sufficiently pleads claims alleging violations of NYSHRL against NYPA officials in their individual capacities.  *Id*. at 13-22.  Plaintiff also withdraws his Title VII claims against the individual Defendants in their official capacities.  *Id*. at 11.  In further support of dismissal, Defendants reassert their arguments that the Complaint fails to provide fair notice of what claims are asserted against each Defendant, Defendant's Reply at 2-4, many of Plaintiff's claims are time-barred, *id*. at 4-5, Plaintiff improperly "lumps" together all claims against individual Defendants, *id*. at 5, and the claims should be dismissed against the NYPA officials who are neither "employees" nor "aiders/abettors" as the NYSHRL defines those terms, *id*. at 6-7, and who were not personally involved in the alleged constitutional deprivations under § 1983.  *Id*. at 7-9.

## 2.    Plaintiff's Claims

Plaintiff asserts 21 claims for relief.  The First, Second, and Third Claims respectively assert race discrimination, hostile work environment, and retaliation under

Title VII against Defendant NYPA.  The Fourth, Fifth, and Sixth Claims allege,

respectively, race discrimination, hostile work environment, and retaliation under the

NYSHRL against all Defendants, with individual liability as to the individual Defendants

based on their capacities as "employers" within the meaning of NYSHRL.  The Seventh,

Eighth, and Ninth Claims assert, respectively, race discrimination, hostile work

environment, and retaliation under NYSHRL against the individual Defendants as aiding

and abetting NYPA in the alleged unlawful conduct.  The Tenth, Eleventh, and Twelfth

Claims respectively allege against NYPA race discrimination, hostile work environment,

and retaliation in violation of § 1983 as enforcing § 1981.  The Thirteenth, Fourteenth,

and Fifteenth Claims, brought pursuant to § 1983 to enforce § 1981, respectively assert

race discrimination, hostile work environment, and retaliation against individual

Defendants based on their direct participation in the alleged unlawful conduct.  The

Sixteenth, Seventeenth, and Eighteenth Claims assert, respectively, violations of

constitutional rights, pursuant to § 1983, against NYPA.  The Nineteenth, Twentieth,

and Twenty-First Claims respectively allege violations of constitutional rights, pursuant

to § 1983, against individual Defendants based on their direct participation in the

asserted unlawful conduct.

**3.    Sufficiency of the Claims**

Defendants do not challenge the sufficiency of Plaintiff's claim based on whether

the factual allegations establish any particular *prima facie* claim or are not sufficiently

plausible, but challenge the claims as time-barred, involving so-called "group" pleading

that fails to provide fair notice as to which claims are alleged against each Defendant

and their respective grounds as required by Fed.R.Civ.P. 8(a), and for asserting claims

against Defendant NYPA Officials who do not qualify as "employers" or "aiders/abettors" under the NYSHRL, or who were not personally involved in the alleged unlawful conduct as required for § 1983 liability.

### A.    Timeliness of Claims

It is undisputed that Plaintiff's Title VII claims are subject to a 300-day limitations period measured from January 25, 2018, when Plaintiff filed the EEOC Charge, *i.e.*, March 31, 2017.  Defendants' Memorandum at 6; Plaintiff's Response at 8-9.  *See Sloth v. Constellation Brands, Inc.*, 883 F.Supp.2d 359, 373 (W.D.N.Y. 2012) ("the statute of limitations for claims brought pursuant to Title VII is 300 days from the date on which an administrative complaint is brought before the EEOC").  *See also* 42 U.S.C. § 2000e-5(e)(1) (requiring employee to file EEOC charge of discrimination within 300 day of the alleged unlawful employment practice).  The parties also agree that Plaintiff's § 1983 claims are subject to a three-year limitations period measured from the filing of the instant Complaint on July 23, 2019, *i.e.*, July 23, 2016.  Defendants' Memorandum at 7-8; Plaintiff's Response at 9.  *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (statute of limitations for § 1983 claims is three years, measured from the filing on the complaint in federal court).[9]  With regard to Plaintiff's NYSHRL claims, however, Defendants maintain that such claims are subject to the same three-year limitations period, measured from the filing of the complaint in this court, as the § 1983 claims, Defendants' Memorandum at 7-8; whereas Plaintiff argues the limitations period was

---

[9] The parties do not discuss that Plaintiff's Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Fifteenth Claims are asserted pursuant to § 1983, as seeking enforcement of 42 U.S.C. § 1981.  Although claims brought pursuant to § 1983 are subject to a three-year statute of limitations, the limitations period for claims brought pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, is four years, which is not tolled pending resolution of an EEOC administrative charge.  *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382 (2004).

tolled for 456 days pending the investigation of Plaintiff's EEOC Charge from January 25, 2018 to April 26, 2019, such that the relevant cut-off for Plaintiff's NYSHRL claims is April 23, 2015.  Plaintiff's Response at 9.  In reply, Defendants argue Plaintiff failed to sufficiently plead facts supporting the tolling of Plaintiff's NYSHRL claims.  Defendants' Reply at 4.  Plaintiff also maintains that although some of the alleged discrete acts of discrimination may be time-barred, the acts are not time-barred under the continuing violation theory of employment discrimination.  Plaintiff's Response at 10-11. Defendants' dispute that Plaintiff has sufficiently pleaded the existence of the requisite on-going custom, policy or practice to support the continuing violation theory of liability. Defendants' Reply at 4-5.  Defendants' statute of limitations arguments are thus limited to whether the limitations period pertaining to Plaintiff's NYSHRL claims was tolled pending the investigation of the EEOC Charge, and whether the continuing violation theory saves any of Plaintiff's otherwise time-barred employment discrimination claims.

"Although the Second Circuit appears not to have weighed in on the issue, 'numerous courts have concluded that NYSHRL claims are tolled during the pendency of an EEOC proceeding.'"  *Whitt v. Kaleida Health*, 298 F.Supp.3d 558, 571 (W.D.N.Y. 2018) (quoting *Celmer v. Livingston Int'l, Inc.*, 2013 WL 951530, at *6 (W.D.N.Y. Mar. 12, 2013), and citing *Sloth*, 883 F.Supp.2d at 373 (concluding that the three-year limitations period is tolled for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter (internal quotation omitted))).  "The rationale for such tolling is that, because CPLR 204(a) tolls the statute of limitations for any complaint filed with the New York State Division of Human Rights, and because complaints filed with the EEOC are deemed to be cross-filed with the New York State

Division of Human Rights, tolling must apply." *Id.* (citing *Manello v. Nationwide Mut. Ins. Co.*, 2012 WL 3861236, at *11 (E.D.N.Y. Sept. 4, 2012); and *Sundaram v. Brookhaven Nat. Labs.*, 424 F.Supp.2d 545, 565 (E.D.N.Y. 2006) ("Because complaints filed with the EEOC are deemed constructively to be cross-filed with the NYDHR, the statute [of limitations applicable to NYSHRL] is also tolled [pursuant to CPLR 204(a)] during the pendency of a claim filed with the EEOC")).  Accordingly, tolling the three-year limitations period pending the EEOC's investigation of the EEOC charge between January 25, 2018 and April 26, 2019 adds an additional 465 days to the cut-off for Plaintiff's NYSHRL claims, rendering Plaintiff's NYSHRL claims timely for events occurring after April 23, 2015.

With regard to Defendants' assertion that Plaintiff was required to specifically allege facts supporting the tolling of the NYSHRL claims, Defendants' Reply at 4, Defendants reference no case on point in support of this argument.  "A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss." *In re S. African Apartheid Litig.*, 617 F.Supp.2d 228, 287 (S.D.N.Y. 2009).  Nevertheless, courts have made exceptions where "the defense appears on the face of the complaint. . . ."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (statute of limitations bar warrants Rule 12(b)(6) dismissal "if the defense appears on the face of the complaint"). *See Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). Further, where a plaintiff's "claims are time-barred on the face of its own complaint, plaintiff has the burden of pleading facts sufficient to establish that the statutes of

limitations should be tolled." *Essex Capital Corporation v. Garipalli*, 2018 WL 6618388, at * 2 (S.D.N.Y. Dec. 18, 2018) (internal quotation omitted).  In the instant case, Plaintiff sufficiently pleaded facts to establish his NYSHRL claims were tolled pending the investigation of his EEOC Charge including that Plaintiff filed the EEOC Charge on January 25, 2018, Complaint ¶¶ 120, 156.a and b, for which the EEOC's investigation was completed on April 26, 2019.  *Id*. ¶ 156.e.

Accordingly, Plaintiff has sufficiently pleaded facts establishing his NYSHRL claims were tolled for 465 days, such that the cut-off date for Plaintiff's NYSHRL claims is April 23, 2015, and Defendants' Motion should be DENIED as to this argument. Alternatively, should the District Judge disagree and find the motion should be granted with regard to this argument, then Plaintiff's NYSHRL claims accruing before July 23, 2016 should be dismissed as time-barred with leave to replead.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead.").

Defendants also argue Plaintiff cannot rely on the "continuing violation" theory to save otherwise untimely claims of discrete, discriminatory acts, because Plaintiff has not pleaded the claimed "unlawful conduct was part of an ongoing custom, policy or practice" to avoid dismissal pursuant to Rule 12(b)(6).  Defendants' Reply at 4-5.  "The continuing violation exception to the limitations period for Title VII complaints permits courts to consider 'claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination,' where 'one act of discrimination in furtherance of the ongoing policy occurred within the limitations period.'"  *Bowen-Hooks v. City of New York*, 13 F.Supp.3d 179, 204 (E.D.N.Y. 2014) (quoting *Lugo v. City of New York,*

518 Fed.Appx. 28, 29 (2d Cir.2013) (further internal quotation omitted), and citing

*Patterson v. Cnty. of Oneida,* 375 F.3d 206, 220 (2d Cir.2004)).   "Under this exception,

'if a Title VII plaintiff files an EEOC charge that is timely as to any incident of

discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of

discrimination under that policy will be timely even if they would be untimely standing

alone.'"   *Id*. (quoting *Chin v. Port Auth. of N.Y. & N.J.,* 685 F.3d 135, 155–56 (2d

Cir.2012) (citations and internal quotation marks omitted)).   Nevertheless, the Supreme

Court instructs that the continuing violation doctrine does not apply to discrete acts of

discrimination, even if they are "related to acts alleged in timely filed charges."   *Nat'l*

*R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002))).

        The Second Circuit has held "'if a Title VII plaintiff files an EEOC charge that is

timely as to any incident of discrimination in furtherance of an ongoing policy of

discrimination, all claims of acts of discrimination under that policy will be timely even if

they would be untimely standing alone."   *Hongyan Lu v. Chase Inv. Services Corp*., 412

Fed.Appx. 413, 416 (2d Cir. 2011) (quoting *Lambert v. Genesee Hospital,* 10 F.3d 46,

53 (2d Cir.1993), *cert. denied,* 511 U.S. 1052 (1994), *overruled on other grounds by*

*Greathouse v. JHS Sec. Inc*., 784 F.3d 105 (2d Cir. 2015)).   "[W]hile this theory may

apply to 'cases involving specific discriminatory policies or mechanisms, . . . multiple

incidents of discrimination, *even similar ones*, that are not the result of a discriminatory

policy or mechanism do not amount to a continuing violation.'"   *Id.* (emphasis added);

*see also Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if

time barred, even when they are related to acts alleged in timely filed charges.").   "While

discrete incidents of discrimination that are not related to discriminatory policies or

mechanisms may not amount to a continuing violation, a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.[10] *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (citing *Lambert,* 10 F.3d at 53).

In the instant case, Plaintiff has failed to allege the discrete discriminatory acts of which he complains was part of a discriminatory policy or practice at NYPA.  Plaintiff also fails to allege that Defendants permitted any specific or related instances of discriminatory conduct "to continue unremedied for so long as to amount to a discriminatory policy or practice."  *Cornwell*, 23 F.3d at 704.  For example, Plaintiff claims on June 27, 2015, he complained to AAO Harvey about the racist images present in a tunnel of the LPGP facility, yet nothing was done about the images. Complaint ¶ 52.  Plaintiff also alleges that on October 28, 2016, Plaintiff complained to HR Director Pollack regarding Plaintiff's earlier complaint pertaining to his failure to receive an interview for the Energy Manager position despite a recommendation from the third-party recruiter, yet Pollack took no action on such complaint.  Complaint ¶ 84. Missing from these allegations, however, is that the asserted failure to act resulted from a policy or practice.  As such, Plaintiff has not alleged facts which, if true, could plausibly establish, based on discrete acts, that there was a policy or practice of discrimination, or that the alleged incidents of discrimination are connected in any way. Rather, the events, as pleaded in the Complaint, are "discrete discriminatory acts,"

---

[10] In contrast, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Morgan*, 536 U.S. at 115 (citations omitted).

many of which "are time-barred and not actionable 'even when they are related to acts alleged in timely filed charges but, rather, each such discrete discriminatory act "starts a new clock for filing charges alleging that act.'" *Lugo*, 518 Fed.Appx. at 29 (quoting *Morgan,* 536 U.S. at 113 (2002)).

Thus, Plaintiff's time-barred claims include those based on discrete acts of alleged discriminatory conduct occurring before March 31, 2017 (Title VII), April 23, 2016 (NYSHRL), July 23, 2016 (§ 1983), and July 23, 2015 (§ 1981).  Defendants' motion should be GRANTED as to such claims with the time-barred claims DISMISSED without prejudice and with leave for Plaintiff to replead that such allegedly discriminatory conduct that is otherwise time-barred is part of a policy or practice of discrimination maintained by Defendants.  *See Cortec Indus., Inc.*, 949 F.2d at 48.

### B.    "Group" Pleading and Fair Notice

Defendants argue in support of dismissal that Plaintiff "improperly lumps defendants together in sweeping assertions that fail to provide a factual basis to distinguish each defendant's conduct and provide fair notice of the claims against him or her."  Defendants' Memorandum at 11.  According to Defendants, this "improper[ ] lump[ing]" requires dismissal of the Fourth through Ninth, Thirteenth through Fifteenth, and Nineteenth through Twenty-First Claims against the Individual Defendants.  *Id*. at 12-13.  In opposition, Plaintiff argues Defendants' argument addresses only the Complaint's claims while ignoring the factual allegations where the specific acts of liability are set forth and provide the individual Defendants with Fed.R.Civ.P. 8(a)'s requisite "fair notice," that Plaintiff asserts claims against "collective" Defendants only when Plaintiff asserts a factual basis supporting such claim against all Defendants, and

that NYPA is liable for all employment discrimination claims found viable as to the conduct of any individual Defendant.  Plaintiff's Response at 5-6.  Plaintiff also specifies which of the Complaint's paragraphs contain allegations against each of the individual Defendants which sufficiently establishes how each Defendant allegedly engaged in discriminatory conduct against Plaintiff.  *Id*. at 6-8.  In further support of summary judgment, Defendants argue the complaint "is so confused, ambiguous, vague, or otherwise unintelligible," requiring Defendants to "speculate as to which claims Plaintiff asserts against each of them, and the grounds upon which they rest."  Defendants' Reply at 3-4.  A fair reading of the Complaint shows it adequately states claims for race-based employment discrimination, hostile work environment, and retaliation against each of the Defendants.

Fed.R.Civ.P. 8(a)(2) "requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).  In the instant case, although the Complaint is not a model of artful pleading, with many of the individual claims asserted against "Defendants," implying all Defendants, it is basic that each separate claim set forth in the Complaint must be construed as asserted only against those Defendants for which there are supporting factual allegations.  For example, the Fourth Claim asserts race-based discrimination pursuant to NYSHRL against all individual Defendants on the basis that such Defendants are "employers" within the meaning of NYSHRL.  Complaint, Fourth Claim.  Factual allegations supporting this claim are set forth in the Complaint in, *inter*

*alia*, ¶ 50 (Quiniones and Pizzo), ¶ 52 (Pizzo), ¶ 64 (Moody), and ¶ 76 (Driscoll and Kessler).  In contrast, in cases where the court held so-called "group pleading" failed to provide adequate notice, the complaint failed to specify which defendant engaged in the alleged unlawful conduct.  *See*, *e.g.*, *McCray v. Westchester County*, 2021 WL 5597158, at *6 (S.D.N.Y. Nov. 30, 2021) (holding plaintiff engaged in impermissible group pleading by failing to allege a single act committed by any of the ten individual defendants that contributed to or resulted in the alleged constitutional violations).

Defendants' Motion should be DENIED insofar as Defendants seeks dismissal of the Complaint for failure to provide fair notice as to which claims are asserted against each Defendant.

### C.    Claims Against NYPA Officials in Their Official Capacities

Defendants argue the claims asserted against individual Defendants in their capacities as NYPA officials, specifically, Claims Four, Five, Six. Seven, Eight, Ninth, Thirteen, Fourteen, Fifteen, Nineteen, Twenty, and Twenty-One, should be dismissed as redundant of the claims asserted against NYPA.  Defendants' Memorandum at 13-16.  In responding in opposition to Defendants' Motion, Plaintiff withdraws his official capacity claims against Defendants Quiniones, Kessler, Driscoll, Pizzo, and Moody.  Plaintiff's Response at 11.  Defendants' Motion therefore should be DISMISSED as moot as to the claims asserted against individual Defendants in their official capacities.

### D.    Claims Against NYPA Officials in Their Individual Capacities

Defendants argues the NYPA Officials are not subject to liability in their individual capacities under the NYSHRL because they are neither employers nor aided or abetted

the alleged unlawful conduct as required for such liability.[11]  Defendants' Memorandum at 16-21.  Defendants also argue the § 1983 claims must be dismissed against the NYPA Officials for lack of personal involvement in the alleged violation of Plaintiff's federal rights.  *Id*. at 21-23.  In opposition, Plaintiff maintains the Complaint adequately pleads individual liability against Defendants Quiniones, Kessler, Driscoll and Pizzo as "employers," Plaintiff's Response at 13-15, and as aiders and abettors who were personally involved in the alleged unlawful conduct.  *Id*. at 15-23.  In reply, Defendants argue Plaintiff erroneously argues the Complaint specifically alleges that Defendant NYPA Officials were responsible for the termination of Plaintiff's employment on February 12, 2019, Defendants' Reply at 6-7, and repeats that Plaintiff has not alleged any of the Defendant NYPA Officials was involved in the alleged discriminatory conduct or infringement of Plaintiff's federal rights so as to be liable under the NYSHRL or § 1983.

Preliminarily, an individual defendant may be liable for employment discrimination under two sections of the NYSHRL, including § 296(1) and § 296(6).  Specifically, § 296(1) provides for employment discrimination if such defendant qualifies as an "employer" defined as one who has "'any ownership interest or any power to do more than carry out personnel decisions made by others.'"  *Sutera v. Rochester City Sch. Dist.*, 2014 WL 4245957, at *5 (W.D.N.Y. Aug. 26, 2014) (quoting *Patrowich v. Chem. Bank,* 473 N.E.2d 11, 13 (N.Y. 1984)).  Alternatively, an individual may be liable under New York Executive Law § 296(6) as an aider or abettor of the discriminatory conduct.  *Id.*  Furthermore, for individual liability for employment discrimination under

---

[11] Defendants do not seek dismissal of the claims against Moody, who is not an NYPA Official, but is an NYPA employee and Plaintiff's supervisor.

§ 296(b) as an aider or abettor, or under § 1983, the defendant must have been

personally involved in the discriminatory conduct.   *See Feingold v. New York*, 366 F.3d

138, 160 (2d Cir. 2004) (the personal involvement required for individual liability under

NYSHRL as an aider and abettor also supports individual liability under § 1983).

### 1.    Employer

In determining whether an employee has the "power to do more" so as to be

considered an "employer" for purposes of NYSHRL, four factors are relevant including

"whether the defendant (1) had the power to hire and fire employees; (2) supervised

and controlled employee work schedules or conditions of employment; (3) determined

the [wage][12] rate and method of payment; and (4) maintained employment records."

*Heinemann v. Howe & Rusling,* 260 F.Supp.2d 592, 595 (W.D.N.Y.2003) (citing *Carter*

*v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984)).

In the instant case, the Complaint sufficiently alleges each of the Defendant

NYPA Officials was an "employer" for purposes of NYSHRL liability.  Specifically, the

Complaint alleges each NYPA Official "is a supervisory official with the authority to hire

and fire employees and the power to do more than carry our personnel decisions made

by others."  Complaint ¶ 8 (Quiniones), ¶ 9 (Kessler), ¶ 10 (Driscoll), and ¶ 11(Pizzo).

*See also* Complaint ¶¶ 189, 198, 206 (each paragraph alleging Quiniones, Kessler,

Driscoll, and Pizzo each "held supervisory positions at NYPA with authority to hire and

fire employees with the power to do more than carry out personnel decisions made by

others and are thus 'employer[s]' within the meaning of the New York State Human

---

[12] Unless otherwise indicated, bracketed material has been added.

Rights Law . . . .").  The Complaint thus sufficiently alleges each NYPA Official qualifies

as an employer for purposes of liability pursuant to § 296(1).[13]

## 2.    Aiding, Abetting, and Personal Involvement

"Section 296(6) provides that it is 'an unlawful discriminatory practice for any

person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under

this article, or to attempt to do so.'"  *Popat v. Levy*, 253 F.Supp.3d 527, 540 (W.D.N.Y.

2017) (quoting N.Y. Exec. Law. § 296(6)).  "[A]n individual defendant may be held liable

under the aiding and abetting provision of the NYSHRL if he actually participates in the

conduct giving rise to a discrimination claim."  *Rojas v. Roman Catholic Diocese of*

*Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (citing *Tomka v. Seiler Corp.*, 66 F.3d

1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*,

524 U.S. 742 (1998)); *see Patrick v. Garlick*, 66 F.Supp.3d 325, 332 (W.D.N.Y. 2014)

(denying motion to dismiss NYSHRL claims against a supervisor because the plaintiff

adequately alleged that the supervisor actively aided and abetted in discrimination and

retaliation, and collecting cases).  In contrast to § 296(1), liability under § 296(6) does

not require that the individual defendant have the ability to hire or fire the plaintiff.

*Feingold v. New York*, 366 F.3d 138, 158 n.19 (2d Cir. 2004).

Here, Plaintiff alleges all Defendants terminated Plaintiff on February 12, 2019,

that such termination was based on Plaintiff's race, and was "a further act of racial

discrimination, harassment, and in retaliation for his complaints of discrimination,

harassment, and retaliation."  Complaint ¶ 150.  Significantly, the Complaint is replete

---

[13] While discovery may eventually demonstrate any or all of these Defendant NYPA Officials do not qualify as an employer pursuant to § 296(1), that is an issue not before the court on Defendants' Motion seeking dismissal pursuant to Rule 12(b)(6), as well as an issue on which the court expresses no opinion.

with factual allegations that Plaintiff made numerous complaints to each of the

Defendant NYPA Officials about the alleged discriminatory conduct to which he

maintains he was subjected, which supports Plaintiff's claims of retaliation.  *See*, *e.g.*,

Complaint ¶ 50 (Plaintiff complained to Pizzo on April 20, 2015 about AAO Harvey's

failure to act on Plaintiff's discrimination complaint regarding the denial of a promotion

based on Plaintiff's race); ¶ 57 (Driscoll advising Plaintiff that Plaintiff's AAO complaint

was found without merit); ¶ 63 (Plaintiff directly contacted Quiniones about the racial

discrimination, hostile work environment, and retaliation Plaintiff was experiencing); ¶

109 (Plaintiff complained to Driscoll and Kessler about his work vehicle being wrapped

in red "DANGER DO NOT ENTER" tape).  Significantly, "it is well settled that managers

or supervisors who fail to investigate or take appropriate remedial measures despite

being informed of the discriminatory conduct may be held individually liable for aiding

and abetting *discrimination* by an employer . . . ."  *Whipple v. Reed Eye Associates*, 213

F. Supp.3d 492, 498 (W.D.N.Y. 2016) (internal quotation omitted) (italics in original).

Accordingly, the Complaint contains sufficient allegations to state a claim against each

NYPA Official pursuant to NYSHRL 296(6) based on aiding and abetting, and, thus,

pursuant to § 1983 as well.[14] *See Feingold*, 366 F.3d 160.

      Accordingly, Defendants' Motions should be DENIED as to the claims against

Defendant NYPA Officials in their individual capacities.

---

[14] Whether Plaintiff can adduce sufficient evidence to prevail on any such claims awaits discovery and summary judgment or trial, issues on which the court expresses no opinion.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion (Dkt. 4) should be GRANTED in part with leave to file an amended complaint, DENIED in part, and DISMISSED as moot in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:  December 15th, 2021
Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December 15th, 2021
            Buffalo, New York

36